RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 4-25-05

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELEANOR CAMPANALE AS ADMINISTRATRIX OF THE ESTATE OF LOUIS J. CAMPANALE SR. <br> Plaintiff, <br><br> v. <br><br> MERCK & CO., INC. <br> Defendant | Civil Action Docket No: <br><br> Plaintiff Demands A Trial By Jury <br><br> **05-10819 RGS** |

## COMPLAINT

**MAGISTRATE JUDGE** Sorokin

### Parties

1. Plaintiff Eleanor Campanale is the Administratrix of the Estate of Louis J. Campanale Sr. who is the surviving spouse of the plaintiff who passed away from an acute cardiac arrest/thrombosis as a result of taking Vioxx. At all relevant times, plaintiff resided in and his administratrix continues to reside in Braintree, Massachusetts.

2. At all relevant times herein, defendant Merck & Co., Inc. (hereinafter "Merck"), was and is an American pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. Defendant was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib).

## Jurisdiction

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by the plaintiff who is a citizen of a different state from the defendant.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391. Defendant advertised and marketed its drug in this District, received substantial profits from sales of the drug in this District and made material omissions and misrepresentations and breached warranties in this District.

## Factual Allegations

5. This action arises from the sales and efficacy of Vioxx, a pain-relief drug containing rofecoxib. Vioxx is a selective COX-2 inhibitor marketed by defendant as an anti-inflammatory analgesic.

6. Defendant Merck obtained FDA approval on Vioxx on or about May of 1999 and began its distribution and sale throughout the United States. Vioxx is a brand name used by Merck to market and distribute rofecoxib.

7. Defendant distributed and sold Vioxx to consumers such as plaintiff Louis J. Campanale Sr.

8. Plaintiff was prescribed 50 mg tablets of Vioxx by his primary care physician who provided plaintiff with free samples and a prescription on or about September of 2001.

9. As a direct and proximate result of taking the Vioxx as prescribed, plaintiff died

from myocardial infarction/ thrombosis on May 15, 2002.

10. Vioxx was approved for marketing based on information in the New Drug Application, which was a fast track, six month approval process to the FDA.

11. Despite knowledge in its clinical trials and post marketing reports, studies and information relating to cardiovascular-related adverse health effects, defendant promoted and marketed Vioxx as safe and effective for persons such as plaintiff.

12. Defendant concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for Merck and safety concerns over hypertension, thrombosis, edema and/or cardiovascular events would have drastically impacted Merck's positioning in the market as compared to its competition drug, Celebrex (celecoxib), which had been placed into the market by Merck competitors Pharmacia and Pfizer some three months prior to the launch of Vioxx.

13. Merck knowingly chose to market this product despite its knowledge at product launch and in post-marketing data thereafter that use of Vioxx carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials where such events were adjudicated by primary investigators with Merck's assistance, and in one or more studies shortly after market launch which showed statistically significant increases in adverse cardiovascular events among Vioxx users.

14. In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and

corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association, Pharmacy Today, Spin War Aside, Lessons Emerge From COX-2 Trials, in August 2000, page 3.

15. Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping the profits obtained through the non-disclosure. Merck engaged in an aggressive and expansive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was more than a $2 billion profit in 2000 alone to Merck and an approximately 23 percent share of the market.

16. The profits to Merck were realized as it continued to withhold relevant data from consumers and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the NEW ENGLAND JOURNAL OF MEDICINE and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

17. On or about August 29, 2001, the JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION published a peer-reviewed human epidemiological study by the

Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukherjee, et al., showing what Merck had concealed – that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among aspirin-indicated patients. See Mukherjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, JAMA 286:8, 954-959, Aug. 22/99, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo a statistically significant increase among Vioxx users. *Id.*

18. In the JAMA study, the authors set forth the theory that "by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events." *Id.* at 957. In a follow up peer reviewed study reported in the JOURNAL OF THE AMERICAN COLLEGE OF CARDIOLOGY on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the COX-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R. & Lomnicka, M. *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This biological plausibility is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to*

*Thromboxane A2*, JOURNAL OF SCIENCE, V. 296:539-541, Apr. 19, 2002.

19. In responsive Merck-authored and sponsored reviews, Merck set forth the theory that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks among its Vioxx users. However, this theory was debunked in approximately January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study published in The Lancet, concluding that based upon information previously available there is an absence of protective effect of naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., et al., *Non-Steroidal Anti-inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study*, THE LANCET, 359: 118-123, Jan. 12, 2002.

20. In mid-September, 2001, Merck received a third Warning letter from the FDA stating in part that defendant's promotional activities and materials are "false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug and Cosmetic Act (the Act) and applicable regulations." The FDA stated that defendant's promotional campaign "minimizes the potentially serious cardiovascular findings" from a Vioxx study and "misrepresents the safety profile for Vioxx." As to Merck's May 22, 2001 press release, the FDA wrote "your claim in the press release that Vioxx has a 'favorable safety profile' is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious

cardiovascular events were twice as frequent in the VIOXX treatment group . . . as in the naproxen treatment group . . ."

21. In approximately April of 2002, Merck was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study. In addition, Merck was required to place new label warnings relaying that Vioxx 50 mg per day is not recommended for chronic use. These warnings were based on information that had been in Merck's possession by approximately January of 2000 at the latest and, as such, Merck did not meet its obligation to provide adequate "direction of warnings" as to the use of Vioxx within the meaning of Section 402 of the Restatement (Second) of Torts or otherwise. Neither did Merck fulfill its alleged obligation to warn the prescribing healthcare provider of these risks.

22. On September 30, 2004, Vioxx was withdrawn from the market worldwide when the data safety monitoring board overseeing a long term study of Vioxx recommended that the study be halted because of an increase risk of serious cardiovascular events, including heart attacks and strokes, among patients taking Vioxx.

23. At all times material hereto, defendant Merck had a significant market share based upon claims of Vioxx's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program.

24. As a result of such marketing, Vioxx gained a significant market share in competition with Celebrex that Merck would not have gained if Merck had not suppressed information about Vioxx and/or made false representations of Vioxx's superiority and efficacy.

25. If defendant had not engaged in this conduct, prescribers such as plaintiff's doctor would not have prescribed Vioxx and patients, such as plaintiff, would have switched from Vioxx to safer products or would have refrained wholly from any use of Vioxx.

26. From approximately 1999 through present, defendant continued to engage in a common scheme in marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as plaintiff.

27. Plaintiff alleges that the suppression of this information constituted a common scheme by defendant to conceal material information from plaintiff.

28. Plaintiff alleges that the marketing strategies, including without limitation to the detail and sampling programs and direct-to-consumer advertising, of the defendant targeted plaintiff to induce plaintiff to purchase Vioxx.

29. At the time that the defendant distributed, manufactured and marketed Vioxx, defendant knew that plaintiff would rely on the marketing, advertisements and product information provided by defendant. Plaintiff indeed relied upon these representations made by defendant.

30. The actions of the defendant, in failing to warn of the hazards associated with the use of its drug Vioxx, in suppressing evidence relating to these hazards, and in

making deliberate and misleading misrepresentations of fact to minimize the danger or to mislead prescribers and patients as to the true risk, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of punitive damages against defendant.

31. At all times material hereto, defendant engaged in trade and commerce in the Commonwealth of Massachusetts.

## COUNT I
### (Negligence)

32. Plaintiff re-alleges and incorporate by reference each and every allegation of fact contained in paragraphs 1 through 31 of his Complaint as though the same were fully and completely set forth herein.

33. At all times relevant herein, defendant, Merck, sold, distributed, supplied, manufactured, designed, developed, marketed and promoted the pharmaceutical drug, Vioxx.

34. Defendant, Merck, owed all individuals purchasing Vioxx, including Plaintiff, the duty of reasonable care and safety, and duties including but not limited to: taking all reasonable and necessary care to properly design, test and manufacture Vioxx, taking all reasonable and necessary care to safeguard such individuals from hazards it knew or should have know about; taking all reasonable and necessary care to discover latent defects or hazards of the product, to take all reasonable care to insure the drug was safe and effective, to take all reasonable care to inform the public and those proscribed Vioxx of the potential hazards, including the risk of

adverse cardiovascular events like myocardial infarction, of the drug, and to take all reasonable and necessary care to promote, advertise, distribute and sell the drug.

35. Defendant Merck breached said duties in that Vioxx was defective, unreasonably dangerous and hazardous in one or more of the following ways:

(a) The drug failed to include adequate warnings that would alert consumers and physicians to the potential risks and serious side effects of the drug;

(b) The defendant failed to adequately and properly test the drug before placing the drug on the market;

(c) The defendant failed to conduct sufficient testing on the drug, which, if properly performed, would have showed that the drug had serious side effects including, but not limited to, adverse cardiovascular events;

(d) The defendant failed to adequately warn that the testing that was done revealed and increased risk of adverse cardiovascular events related to the drug;

(e) The defendant failed to adequately warn plaintiff that the use of the drug carried a risk of temporary or permanent disability due to adverse cardiovascular events and other serious side effects;

(f) The defendant failed to warn the Plaintiff that the use of the drug carried a risk that adverse cardiac events resulting in death or paralysis might be caused by the drug;

(g) The defendant failed to provide adequate post-marketing warnings or instructions after the defendant knew or should have known of the

significant risks associated with the use of the drug;

(h) Defendant encouraged misuse and overuse of the drug while underplaying the side effects to doctors and public and by overstating the benefits of Vioxx in order to make a profit from their sales

(i) The defendant failed to adequately and timely inform the healthcare industry, including prescribers, of the risks of serious personal injury and death from the use of Vioxx.

36. The defendants knew or should have known that the drug caused unreasonably dangerous risks and serious side effects of which the plaintiff would not be aware; the defendants nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer methods for the treatment.

37. In addition, MERCK had a legal duty to comply with the U.S. Food, Drug and Cosmetic Act, U.S. Code ' 21 U.S.C. '301 et seq., and regulations promulgated thereunder.

38. MERCK negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following : 21 CFR '330.10(a)(4)(v) (Labeling); 21 CFR ' 369.10 (Labeling); 21 CFR " 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR 1.21 (a) (Labeling); 21 CFR 600.80 (Postmarketing reporting of Adverse experiences); 21 CFR '314. 50 (Post Marketing Reports of Adverse Drug Experiences. The violations of those and other statutes and regulations constitute negligence per se.

39. MERCK knew or should have known that consumers, like plaintiff, would suffer injury as a result of Merck's failure to exercise ordinary care as described above.

40. As a direct and proximate result of the negligence of the defendant, plaintiff suffered a myocardial infarction/thrombosis causing his death.

## COUNT II
### (Breach of Warranty)

41. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 40.

42. Defendant Merck impliedly warranted that its drug Vioxx was of merchantable quality, safe and fit for ordinary and particular purposes.

43. Defendant had reason to know that consumers such as plaintiff relied upon its skill and judgment to select and furnish safe and suitable drugs for which Merck manufactured, distributed, marketed and sold.

44.. As described above, Vioxx was defective and in an unsafe and unsuitable condition at the time of sale causing injury and death to plaintiff.

45. As a direct and proximate result of defendant Merck's breach of warranty of merchantability and/or fitness for particular purpose, plaintiff was caused to suffer impairment of health, a myocardial infarction, thrombosis and death.

## COUNT III
### (M.G.L. c.93A)

46. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 45.

47. Defendant Merck engaged in trade and commerce within the meaning of Mass. Gen. Laws Ch. 93A, Section 2.

48. Defendant's conduct as set forth above violated Mass. Gen. Laws Ch. 93A, Section 2.

49. Defendant's conduct as set forth above was a wilful and knowing violation of Mass. Gen. Laws Ch. 93A, Section 2 and/or defendant knew or should have known that its conduct as set forth above violated Mass. Gen. Laws Ch. 93A, Section 2.

50. As a direct and proximate result of defendant's conduct in violation of M.G.L. c. 93A, plaintiff was caused to suffer impairment of health, a myocardial infarction, thrombosis and death.

## COUNT IV
### (Wrongful Death)

51. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 50.

52. This is an action by the plaintiff Eleanor Campanale as Administratrix of the Estate of Louis J. Campanale Sr. against the defendant Merck for the wrongful death of Louis J. Campanale Sr. For the use and benefit of the next of kin of said decedent in accordance with the provisions of Massachusetts General Laws Chapter 229, as amended, and applicable at the times material herein.

53. Defendant's conduct amounted to gross negligence.

54. This gross negligence caused the death of Louis J. Campanale Sr. resulting in the deprivation of economic income, support and companionship to decedent's spouse and next of kin, and has caused emotional distress and other damages to

decedent's surviving spouse and next of kin.

55. This gross negligence caused the death of Louis J. Campanale Sr. warranting punitive damages to be assessed by the trier of fact.

**DEMAND FOR RELIEF**

WHEREFORE, plaintiff Eleanor Campanale as Administratrix of the Estate of Louis J. Campanale Sr. prays for the following relief against defendant Merck for an amount to be determined by the trier of fact for each count.

A. Pain and suffering;

B. Medical expenses;

C. Emotional distress;

D. Consequential damages;

E. Loss Consortium;

F. Lost Wages and Earning Capacity

G. Economic Damages;

H. Loss of Benefits;

I. Disgorgement of Profits;

J. Punitive Damages;

K. Attorneys fees;

L. Costs;

M. Treble and/or double damages;

N. Interest; and

O. Any other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

        Respectfully submitted,

        Eleanor Campanale as Administratrix of the
        Estate of Louis J. Campanale Sr., Plaintiff

        */s/ John A. Dalimonte*
        By his attorneys,
        John A. Dalimonte, BBO# 554554
        KARON & DALIMONTE
        85 Devonshire Street, Suite 1000
        Boston, MA 02109
        (617) 367-3311

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Eleanor Campanale as Administratrix of the Estate of Louis J. Campanale

## DEFENDANTS
Merck & Co., Inc.

**(b)** County of Residence of First Listed Plaintiff   **Norfolk County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **State of New Jersey**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John A. Dalimonte, Karon & Dalimonte, 85 Devonshire Street, Suite 1000, Boston, MA 02109 (617) 367-3311

Attorneys (If Known)
05-10819

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☒ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 and 28 U.S.C. 1391; 21 U.S.C. 301 et seq., 21 CFR 330.10(a)(4)(v); 21 CFR 369.10; 2

Brief description of cause:
This is a cause of action against defendant for the wrongful death of plaintiff caused by his ingestion of

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 20,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Eldon E. Fallon
DOCKET NUMBER MDL No. 1657 (USDC Eas

DATE 04/22/2005
SIGNATURE OF ATTORNEY OF RECORD
John Dalimonte

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) <u>Eleanor Campanale as Administratrix of the Estate of Louis J. Campanale v. Merck & Co., Inc</u>

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   _X_ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

   **05-10819**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   <u>In re: VIOXX PRODUCTS LIABILITY LITIGATION, MDL No. 1657 Section L (Judge Fallon) (USDC Eastern District of Louisiana)</u>

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO **X**

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO **X**

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO **X**

7. Do <u>all</u> of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES **X**    NO ☐

   A. If yes, in which division do <u>all</u> of the non-governmental parties reside?

      Eastern Division **X**    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    <u>John A. Dalimonte</u>
ADDRESS    <u>Karon & Dalimonte, 85 Devonshire Street, Suite 1000, Boston, MA 02109</u>
TELEPHONE NO.    <u>(617) 367-3311</u>

(CategoryForm[1].wpd - 2/15/05)